IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID DAVIES d/b/a DAVIES HOME SERVICES, individually and as the representative of a class of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>W.W. GRAINGER, INC. and JOHN DOES 1-12,<br><br>Defendants. | Case No. 13 CV 3546<br><br>Hon. Sharon Johnson Coleman<br><br>Magistrate Judge Mason |

**DEFENDANT W.W. GRAINGER, INC.'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR DETERMINATION THAT THE
COURT SHOULD NOT CERTIFY A CLASS**

**I.    INTRODUCTION**

Rule 23(c)(1)(A), Federal Rules of Civil Procedure, provides that a district court should determine, at an early practicable time, whether to entertain a lawsuit as a class action. FED. R. CIV. P. 23(c)(1)(A). The parties have now completed discovery on one issue critical to class certification, namely whether the Plaintiff, David Davies, can fairly and adequately represent the class. *See* FED. R. CIV. P. 23(a)(4).[1] That discovery demonstrates that he cannot.

---

[1] On July 22, 2013, this Court referred this matter to Magistrate Judge Mason for discovery supervision and settlement discussions. (D.E. 23.) On August 8, 2013, Magistrate Judge Mason ordered the parties to conduct discovery on the limited issue of Davies' adequacy to serve as a representative to the putative class. (*See* D.E. 27.) Davies filed a motion for reconsideration regarding Magistrate Judge Mason's order regarding discovery. (D.E. 28.) On September 9, Magistrate Judge Mason denied Davies' motion and instructed the parties to proceed with discovery regarding the adequacy of the class representative. (D.E. 33, at 3.) The parties have now substantially completed discovery on the adequacy issue. Defendant does not concede that Davies meets the other requirements of Rule 23, Federal Rules of Civil Procedure. These additional requirements need not be addressed at this time because Plaintiff Davies so clearly fails to meet the "adequacy" requirement of Rule 23(a)(4). To be entitled to class certification, a plaintiff must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—as well as one of the subsections of Rule 23(b). *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 811 (7th Cir. 2012). "Failure to meet any of the Rule's requirements precludes class

Davies alleges in his Amended Complaint ("Am. Compl.") that he is an adequate representative of a class of persons who received marketing faxes from Defendant W.W. Grainger ("Grainger") and who did not consent to receive such faxes. (*See* Am. Compl., attached hereto as Tab A, ¶ 15.) The Telephone Consumer Protection Act ("TCPA"), however, allows companies like Grainger to lawfully send marketing faxes to their existing business customers who post their fax numbers in advertising or public directories. 47 U.S.C. § 227(b)(1)(C)(i)-(iii).

Facts established in discovery demonstrate that Grainger has unique TCPA defenses to Davies' allegations:

- Davies had a longstanding, established business relationship with Grainger spanning over a decade;

- Davies voluntarily made his fax number available in at least two public directories over several years; and

- Davies recognized and understood the opt-out language on the fax advertisement he received from Grainger.

These facts provide complete defenses to Davies' claims under the TCPA and for common law conversion. Davies, therefore, cannot adequately represent the putative class because a putative class representative subject to obvious defenses cannot satisfy Rule 23's adequacy requirement. *CE Design, Ltd. v. King Architectural Metals, Inc*., 637 F.3d 721, 726 (7th Cir. 2011). Accordingly, Grainger seeks a determination that this action cannot be certified as a class action.

## II. STATEMENT OF FACTS

On December 2, 2009, Grainger sent a single fax advertisement to Davies as part of an advertising campaign directed to certain small business customers. (*See* copy of December 2,

---

certification." *Harper v. Sheriff of Cook Cnty*., 581 F.3d 511, 513 (7th Cir. 2009) (quoting *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)) (internal quotation marks omitted).

2009 fax received by Davies, hereinafter "December 2009 Fax," attached hereto as Tab B; Deposition of Robert Finn, Grainger Rule 30(b)(6) Deponent, October 15, 2013 ("Finn Tr."), relevant portions of which are attached at Tab C, at 16:13-17; 19:15-18; 74:19-21.)

Davies reviewed the one-page fax and then stored it away. He did not take Grainger up on its offer of $25 off his next purchase of $100 or more, nor did he ask to opt out of further fax advertising from Grainger, as he was clearly advised he could do on the bottom of the fax. (*See* Deposition of David Davies, November 6, 2013 ("Davies Tr."), relevant portions of which are attached at Tab D, at 21:23-22:21; 34:24-35:21; 82:2-7; December 2009 Fax, Tab B.)

At the time he received this fax, Davies was familiar with Grainger because he was an existing customer. Indeed, Davies had conducted nine separate business transactions with Grainger between February 1994 and September 2008. (*See* Declaration of Thomas Carlson, Nov. 18, 2013 ("Carlson Decl."), attached hereto at Tab E, ¶¶ 4-5; Davies Tr., Tab D, at 42:13-43:9.) Davies did not contest the veracity of Grainger's business records, but did testify that his most recent transaction with Grainger, a purchase of a dehumidifier on September 15, 2008, may have been made by one of his customers to whom Davies had given his Grainger account information. (*See* Davies Tr., Tab D, at 63:8-65:19.) Davies also testified that it was possible that he had provided his fax number directly to Grainger during the course of his transactions with the company. (*See id.* at 79:5-20.)

In the years prior to Grainger's December 2009 Fax, Davies' fax number had also appeared in multiple public directories, including the 2007 and 2008 Yellow Pages for the North Shore Region. (*See* Davies Tr., Tab D, at 76:10-14; North Shore directory pages, attached hereto as Tab F.) Grainger obtained Davies' fax number from such a source through a company called Infogroup. Infogroup provides marketing-related services, including compilation and

3

maintenance of information gathered from publicly available sources. (*See* Declaration of Christopher Fruehwald, Dec. 16, 2013 ("Fruehwald Decl."), attached hereto at Tab G, ¶ 2.)

In 2009, Grainger entered into an agreement with Infogroup, whereby Infogroup would provide to Grainger facsimile numbers contained in Infogroup's database of publicly sourced contact information that matched Grainger's records of certain existing small business customers. (*See id.* ¶ 3.) Infogroup's internal records indicate that Davies' fax information existed in Infogroup's database, and that the information had been obtained from the 2005, 2006, 2007, and/or 2008 editions of the Yellow Pages and/or Business White Pages covering the North Shore region of Illinois. (*Id.* ¶¶ 4-5.) At his deposition, Davies conceded that he was aware that his fax number, 847-825-3741, appeared in those directories. (*See* Davies Tr., Tab D, at 73:3-77:15.) He further testified that the fax number was a second phone that he had received from the phone company and that he elected to direct the phone number to a fax machine in his office. (*Id*. at 70:21-71:20.) Davies also set up a telephone answering system to handle voice calls and faxes received via that phone number. (*Id*. at 71:11-73:2.) From February 19, 2008 through October 24, 2012, Davies received and squirreled away at least 700 faxes from various senders (only one of which was from Grainger). (*See* Davies log of faxes, attached hereto as Tab H.)

On April 5, 2013, more than three years after receiving the December 2009 Fax from Grainger, Davies filed a putative class action complaint in the Circuit Court of Cook County alleging that Grainger violated the TCPA and committed common-law conversion. Davies then filed an amended complaint, Tab A, on April 12, 2013. Grainger removed the action to the Northern District of Illinois shortly thereafter. (*See* D.E. 1.) Davies was prompted to retain counsel and file this lawsuit because he had received class settlement notices in other TCPA cases from counsel. (*See* Davis Tr., Tab D, at 25:8-26:7.) He thought he could make some

money by filing his own lawsuit. (*Id*. at 24:10-25:2.)

**III.     ARGUMENT**

      **A.     A Proper Class Representative Must Be Able to Fairly and Adequately Protect the Class.**

"To certify a class, a district court must find that each requirement of Rule 23(a) . . . is satisfied . . . ." *Harper v. Sheriff of Cook Cnty.*, 581 F.3d 511, 513 (7th Cir. 2009). One of the requirements under Rule 23(a) is that the party seeking to serve as the class representative "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "A class may only be certified if the trial court is satisfied, *after a rigorous analysis*, that the prerequisites of Rule 23(a) have been satisfied." *CE Design*, 637 F.3d at 723 (internal quotation marks omitted; emphasis in original). The named plaintiff bears the burden of showing that each requirement is satisfied. *See Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 596 (7th Cir. 1993).

Rule 23 requires the district court to address class certification "[a]t an early practicable time after a person sues or is sued as a class representative." FED. R. CIV. P. 23(c)(1)(A); *see also Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) (noting that Rule 23 allows a court to "deny class certification even before the plaintiff files a motion requesting certification"). Promptly and properly resolving the class certification question protects both defendants and class members. *See CE Design*, 637 F.3d at 723; *see also Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 915 (7th Cir. 2011) ("Certification as a class action can coerce the defendant into settling on highly disadvantageous terms, regardless of the merits of the suit, and in [TCPA cases] is highly likely to because of the magnitude of the potential damages." (internal quotation marks omitted)). Here, because discovery has established that Davies is not an adequate class representative under Rule 23, the Court should now deny class certification.

  **B.  Davies Is Not an Adequate Class Representative Because Grainger Has Unique Defenses Against His TCPA Claim.**

  The "adequate representation inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). Rule 23's adequacy requirement has a "constitutional dimension" because "absentee members of a class will not be bound by the final result if they were represented by someone who had a conflict of interest with them or who was otherwise inadequate." *Spano v. Boeing Co.*, 633 F.3d 574, 586-87 (7th Cir. 2011).

  As the Seventh Circuit has explained in discussing Rule 23's adequacy requirement, "'[t]he presence of ***even an arguable defense*** peculiar to the named plaintiff or a small subset of the plaintiff class may . . . bring into question the adequacy of the named plaintiff's representation'" because the named plaintiff may "'become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer.'" *CE Design*, 637 F.3d at 726 (quoting *J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980)) (emphasis added). Where a putative class "representative is subject to a unique defense that is likely to become a major focus of the litigation," that person is not an adequate class representative because his "interests might not be aligned with those of the class, and the representative might devote time and effort to the defense at the expense of issues that are common and controlling for the class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009) (internal quotation marks omitted); *see also CE Design*, 637 F.3d at 726; *Koos v. First Nat'l Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974) ("Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class

representative.").

Accordingly, when the class representative is deemed inadequate, the proper course is to deny class certification. *See Hardy v. City Optical Inc.*, 39 F.3d 765, 770 (7th Cir. 1994) (noting "a plaintiff against whom the defendants have a defense not applicable to other members of the class is not a proper class representative" because "[t]hat plaintiff's claim is quite likely to be dismissed even if the other class members' claims are meritorious, and once dismissed from the suit the plaintiff can no longer be the class representative"); *Lipton v. Chattem, Inc.*, 289 F.R.D. 456, 459-60 (N.D. Ill. 2013) (holding that named plaintiff subject to unique defenses to state law claims could not be adequate class representative); *Wooley v. Jackson Hewitt Inc.*, No. 07 C 2201, 2011 WL 1559330, at *9 (N.D. Ill. Apr. 25, 2011) (holding that colorable *in pari delicto* defense rendered inadequate a proposed class representative) (all unreported decisions attached hereto as Tab I).

Discovery has revealed several reasons why Davies is an inadequate class representative in a putative TCPA class action. The TCPA generally allows the use of a facsimile machine to send an unsolicited advertisement if:

> (i) the unsolicited advertisement is from a sender with an established business relationship with the recipient; (ii) the sender obtained the number of the telephone facsimile machine through . . . (II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution . . . and (iii) the unsolicited advertisement contains a [compliant opt-out notice which allows a recipient to decline further fax advertising].

47 U.S.C. § 227(b)(1)(C)(i)-(iii).

Davies alleges in his Amended Complaint that the putative class consists of individuals who supposedly received fax advertising before Grainger "first receiv[ed] the recipients' express permission or invitation." (Am. Compl., Tab A, ¶ 15.) Unlike the alleged putative class

7

members, however, Davies invited the receipt of fax advertising by publishing his fax number in public directories and by maintaining an established business relationship with Grainger. This places him in conflict with putative class members who may not have invited the receipt of fax advertising or who may not have an established business relationship with Grainger. Davies, as a class representative, will be forced to rebut evidence unique to him, all to the detriment of other putative class members. Under settled law, the putative class cannot be certified under these circumstances. We address in more detail below the evidence unique to Davies that precludes class certification.

### 1. Davies Has an Established Business Relationship with Grainger.

Facts developed during discovery demonstrate that Davies has an established business relationship with Grainger. As discussed above, Grainger's records indicate that Davies engaged in nine separate transactions with Grainger from 1994 to 2008. (*See* Carlson Decl., Tab C, ¶¶ 4-5.) Davies does not meaningfully contest the existence of these transactions or of a business relationship with Grainger. Indeed, Davies conceded at his deposition that he had no reason to doubt the veracity of Grainger's business records, which showed this series of purchases. (Davies Tr., Tab D, at 42:13-43:9.) He also conceded that he does not recall ever contacting Grainger to terminate the business relationship. (Davies Tr., Tab D, at 21:23-22:21.) In short, sworn testimony from both Grainger and Davies shows that the parties had a business relationship when Grainger sent the December 2009 Fax.

Under the TCPA, it is not unlawful for a business to send unsolicited fax advertisements when the sender has "an established business relationship with the recipient." *See* 47 U.S.C. § 227(b)(1)(C)(i). Federal regulations further define an "established business relationship" as:

> a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without

> an exchange of consideration, on the basis of an inquiry, application, *purchase or transaction* by the business or residential subscriber regarding products or services offered by such person or entity, *which relationship has not been previously terminated by either party*.

47 C.F.R. § 64.1200(f)(6) (emphasis added). The FCC's commentary on this regulation explains that once a customer establishes a business relationship with an entity through, *inter alia*, a voluntary purchase, that customer has an established business relationship with the entity that "will permit [the] entity to send facsimile advertisements . . . until the [customer] 'terminates' it *by making a request not to receive future faxes*." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 21 F.C.C.R. 3787, 3798 (F.C.C. Apr. 6, 2006) (emphasis added). The Seventh Circuit has noted that "the FCC continue[s] to emphasize a broad reading of the relationships covered by the [established business relationship] defense." *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 451 (7th Cir. 2010).

Another court in this district, following the Seventh Circuit's 2011 *CE Design* opinion, recently concluded that the alleged typicality and adequacy of the named class representative was fatally undermined where the class representative's business relationship with the defendant may have been different from that of other putative class representatives. *See Quality Mgmt. & Consulting Servs., Inc. v. SAR Orland Food Inc.*, No. 11 C 06791, 2013 WL 5835915, at *5 (N.D. Ill. Oct. 30, 2013) (Chang, J.). In *Quality Management*, evidence existed that the purported class representative had provided its business card to the defendants' faxing agent. *Id.* As Judge Chang recognized:

> SmartFax had Camasta's business card, but it may not have had others. This factual dispute may undermine the typicality and adequate-representation requirements . . . . [T]his defense is unique to [Plaintiff]. Therefore, [Plaintiff's] claim is not typical, and as a result, it is not an adequate class representative.

*Id*.

Here too, Davies is not an adequate class representative. Grainger properly sent a single fax to Davies, an existing customer. That fax contained, in full compliance with the TCPA, a notice advising Davies that he could make a request not to receive additional faxes. (December 2009 Fax, Tab B.[2]) Davies, who was fully aware of his right to make such a request, elected against contacting Grainger. (Davies Tr., Tab D, at 37:14-22.) Under these circumstances, Davies will be forced to defend against a viable established business relationship defense. To prevail on his TCPA claim, Davies will be forced to direct resources to rebutting the particular facts that comprise Grainger's established business relationship defense as to Davies. The effort required to assert this rebuttal—especially given Davies' admissions during discovery—will inevitably distract Davies from representation of the other putative class members who, if the allegations in Davies' Amended Complaint are accepted as true, will not be subject to the same defense.

### 2. Davies Voluntarily Advertised His Facsimile Number in a Publicly Available Directory and Gave It to Grainger.

Discovery has further revealed evidence unique to Davies, namely that he published his facsimile number in a public directory. The TCPA provides that, where an established business relationship exists, it is not unlawful to send unsolicited facsimile advertisements where the sender obtained the fax number through "a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution." 47 U.S.C. § 227(b)(1)(C)(ii)(II). Federal regulations establish that "[i]f a sender obtains the facsimile number from the recipient's own directory, advertisement, or Internet site, it will be presumed that the number was voluntarily made available for public distribution, unless

---

[2] Grainger's fax stated, in pertinent part: "If you do not wish to receive faxes from Grainger, please call 1-888-739-4920 extension 1732 and enter the fax number(s) to which you no longer wish to receive correspondence, or fax your request to 1-866-404-3933. Our failure to comply with your request within 30 days of receipt is unlawful." (December 2009 Fax, Tab B.)

such materials explicitly note that unsolicited advertisements are not accepted at the specified facsimile number." 47 C.F.R. § 64.1200(a)(4)(ii)(B). The FCC, in a 2006 Report and Order, noted that because "it would be unduly burdensome for senders of facsimile advertisements to verify that a consumer voluntarily agreed to make the facsimile number public in every instance," a facsimile number obtained from the recipient's own advertisement "would serve as evidence of the recipient's agreement to make the number available for public distribution." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 21 F.C.C.R. at 3795.

Here, Davies voluntarily published his fax number in a publicly available directory and was aware that he could receive fax advertisements as a result. Davies concedes that his fax number appeared in the 2007 and 2008 Yellow Pages for the North Shore Region. (*See* Davies Tr., Tab D, at 76:10-14.) This was a phone number that he asked the phone company to provide. (*Id*. at 78:7-11.) He connected that number to a fax machine in his office. (*Id*. at 71:11-72:1; 96:21-97:2.) Additionally, Davies concedes that he may have voluntarily provided his fax information directly to Grainger. (*Id.* at 79:5-20.) Grainger also obtained Davies' fax number from the public sources through its contract with Infogroup. (*See* Finn Tr., Tab C, at 40:13-24; 44:3-8.) At no time did Davies "explicitly note that unsolicited advertisements are not accepted at the specified facsimile number." 47 C.F.R. § 64.1200(a)(4)(ii)(B).

These facts, which will require close analysis by the Court, provide more than an arguable defense to Davies' TCPA claim. *See Lipton*, 289 F.R.D. at 460 (noting that "a defense need not be a sure bet to defeat a proposed class representative's adequacy; the defense need only be 'arguable'"); *see also Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011) (noting that even the "possibility" of conduct that would create a conflict of interest is sufficient

to defeat class certification); *Spano*, 633 F.3d at 584 (noting that even "a possible defense that was unique to" a putative class representative could render the putative representative inadequate). Under Rule 23, therefore, Davies cannot adequately represent the class alleged in his Amended Complaint consisting of persons who do not have established business relationships with Grainger and who did not voluntarily post or advertise their fax numbers.

### 3. Davies Is a Sophisticated Fax Recipient Who Fully Understood His Right to Opt Out of Future Faxes.

Additional evidence regarding Grainger's opt-out notice demonstrates that Davies is not an adequate class representative. Davies' Amended Complaint alleges that the opt-out notice at the bottom of the December 2009 Fax was not "clear and conspicuous" as required by the TCPA, 47 U.S.C. § 227(b)(2)(D)(i). (*See* Am. Compl., Tab A, ¶ 13.) This boiler-plate allegation, however, was contradicted by Davies at his deposition. When confronted with a copy of the December 2009 Fax at his deposition, Davies testified that he could read and understand the opt-out notice. Indeed, as someone who has received over 700 fax advertisements over the scope of a few years, and as a claimant in other TCPA class actions, Davies was well aware of and fully understood his right to opt out of future faxes. He purposefully chose not to exercise his right to opt out. He just let the faxes pile up so that he could be a TCPA plaintiff and try to make some money.

Davies' deposition testimony on these points is compelling. He conceded at his deposition that:

- He knew he had the right to opt out of receiving fax advertisements, (*see* Davies Tr., Tab D, at 37:14-18 ("Q: You already knew from your custom and practice in dealing with faxes, that you had the right to call or fax a request to opt out of receiving any future faxes. Right? A: I've seen that in cases, yes."));

- He could read the opt-out notice on Grainger's fax, (*see id.* at 36:13 ("I can

12

read this.")));

- He understood the notice, (*see id.* at 36:22-37:1 ("Q: Okay. And is there anything on there that you don't understand, that it's not in English or a language that you don't understand? A: I understand it."));

- And as far as he could recall, he never asked Grainger to stop sending him faxes, (*see id.* at 37:19-22 ("Q: Yes. And in this particular—in the Grainger case, you elected not to exercise [the option to opt out of receiving any future faxes]. Correct? A: That is correct.")).

Davies' admissions that he knew of his right to opt out, that he could read the opt-out notice on Grainger's fax, and that he understood it are directly contrary to the allegations he seeks to advance on behalf of others—that the Grainger opt-out notice was not sufficiently clear and conspicuous. Likewise, Davies' unusual practice of accumulating the hundreds of faxes he received—choosing not to exercise the right to opt out that he knew he had—almost certainly makes him different than the rest of the putative class. (*See, e.g.*, Am. Compl. ¶¶ 18, 31-34.)

### 4.   Davies Gave His Express Invitation to Receive Fax Advertisements.

As explained above, if an existing business relationship existed and if Grainger obtained Davies' fax number from a public directory, then Grainger has a substantial defense as to Davies' TCPA claim. Even if no established business relationship existed between Grainger and Davies, however, Grainger has a separate "express invitation" defense against Davies.

The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person *without that person's prior express invitation or permission, in writing or otherwise*." 47 U.S.C. § 227(a)(5) (emphasis added). Where a plaintiff has given prior express invitation to receive advertisements, a defendant does not violate the TCPA by faxing such advertisements to the plaintiff. *See id.* § 227(b)(1)(C) (prohibiting sending of "an unsolicited advertisement" unless elements of established business relationship defense are met). The Seventh Circuit has

13

recognized that express invitation is an independent basis for defending against a TCPA claim. *See CE Design*, 637 F.3d at 725 (referencing TCPA's definition of "unsolicited advertisement" and analyzing whether plaintiff's conduct amounted to "express invitation or permission"); *cf. Gene and Gene LLC v. Biopay LLC*, 541 F.3d 318, 327 (5th Cir. 2008) (noting that issue presented was "whether [defendant's] fax advertisements were transmitted without the prior express invitation or permission of each recipient").

Here, the evidence unique to Davies creates an express consent defense. Davies conceded in his deposition that his fax number was published in the 2007 and 2008 Yellow Pages for the North Shore Region. (Davies Tr., Tab D, at 76:10-14.) Although he protested that he did not consent to this publication, his protests were not credible. He voluntarily asked for the phone number and hooked it up to his fax machine. He left that fax hook-up in place for several years and received over 700 faxes. Davies offers no explanation for how his number could have been published without his express consent. Moreover, Davies concedes that he may have voluntarily provided his fax number to Grainger. (*Id.* at 79:5-20.) This evidence provides Grainger with a defense that Davies gave prior express invitation to receive fax advertisements, regardless of whether an established business relationship existed between Grainger and Davies (which it did). *See CE Design*, 637 F.3d at 726-28 (holding defendant had arguable consent defense where plaintiff published fax number in *Blue Book* directory and on company website).

### C. Davies' Conversion Claim Also Cannot Be Certified as a Class Action.

Finally, Davies is not an adequate class representative on his common-law claim of conversion—preposterously based on the alleged "theft" of his one piece of paper and the ink needed to print the December 2009 Fax. Several courts have held that the deprivation of a piece of paper and ink is too *de minimis* to support a claim of conversion. *See, e.g.*, *G.M. Sign, Inc. v.*

14

*Elm Street Chiropractic, Ltd.*, 871 F. Supp. 2d 763, 768 (N.D. Ill. 2012) ("The loss of a single sheet of paper and a minuscule amount of toner cannot be aggregated, and is too trivial an injury to amount to an actionable conversion."); *Garrett v. Rangle Dental Lab.*, No. 10 C 1315, 2010 WL 3034709, at *1 (N.D. Ill. Aug. 3, 2010) (dismissing conversion claim based on one-page fax's use of paper and ink).

Moreover, the fact that Davies was an existing customer of Grainger who posted his fax number in the Yellow Pages and consented to receive fax advertising would be a defense to a claim of conversion since the deprivation of paper and ink resulting from the fax would not have been unauthorized. *See, e.g.*, *Fortech, L.L.C. v. R.W. Dunteman Co., Inc.*, 366 Ill. App. 3d 804, 809, 852 N.E. 2d 451, 456 (1st Dist. 2006) ("Conversion is an *unauthorized* assumption of the right to possession or ownership of personal property." (emphasis added)). Grainger's unique defense to Davies would not exist as to the putative class, as alleged in the Amended Complaint, who did not consent to receive fax advertising from Grainger, and renders Davies an inadequate class representative to pursue the conversion claim as well.

### III.   CONCLUSION

Grainger's various defenses to Davies' claims render him unable to fairly and adequately represent the putative class under Rule 23. Consequently, class certification should be denied.

Dated:  December 18, 2013                    Respectfully submitted,
                                             W.W. GRAINGER, INC.

                                             /s/Kimball R. Anderson
                                             Kimball R. Anderson #499808
                                             Norman K. Beck #6275116
                                             David Luger #6299381
                                             WINSTON & STRAWN LLP
                                             35 W. Wacker Drive
                                             Chicago, IL 60601
                                             (312) 558-5600
                                             kanderson@winston.com

                                             *Counsel for Defendant W.W. Grainger, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Defendant W.W. Grainger, Inc.'s Memorandum in Support of Its Motion for Determination that the Court Should Not Certify a Class** was sent via ECF and PDF email this 18th day of December, 2013, to: Phillip A. Bock, James M. Smith, and Phillip J. Bullimore, BOCK & HATCH, LLC, 134 North LaSalle Street, Suite 1000, Chicago, Illinois 60602.

/s/Norman K. Beck