IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID DAVIES d/b/a DAVIES HOME SERVICES, individually and as the representative of a class of similarly-situated persons, | )<br>)<br>)<br>) |
| Plaintiff, | ) Case No. 13-cv-3546<br>)<br>) Judge Sharon Johnson Coleman |
| v. | )<br>) Mag. Judge Michael T. Mason |
| W.W. GRAINGER, INC. and JOHN DOES 1-12, | )<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

David Davies d/b/a Davies Home Services ("Plaintiff") submits this brief in support of his Motion for Summary Judgment under Fed. R. Civ. P. 56 and Local Rule 56.1 (a) (2).[1] Plaintiff now moves for summary judgment on his individual TCPA claim.

**INTRODUCTION**

Plaintiff filed his Amended Class Action Complaint alleging that W.W. Grainger, Inc. ("Defendant") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (the "TCPA") by sending unsolicited advertisements by facsimile to Plaintiff and others without a compliant opt-out notice. (Doc. 13-2). On June 27, 2014, the Court, over Plaintiff's objections, struck the class allegations from his complaint. (Doc. 68). On October 2, 2014, the Seventh Circuit denied Plaintiff's Fed. Rule 23 (f) Petition for Leave to Appeal.

---

[1] Plaintiff has filed his Statement of Uncontested Material Facts In Support of Plaintiff's Motion for Summary Judgment ("SOF") concurrently with this Memorandum.

Plaintiff is entitled to judgment as a matter of law because, even when viewed in the light most favorable to Defendant, the undisputed facts demonstrate that Defendant violated the TCPA by sending Plaintiff an unsolicited advertisement by fax that did not contain a clear and conspicuous opt-out notice. Because the opt-out notice did not comply with the TCPA, and the FCC's regulations, even if Defendant can prove it had an "established business relationship" with Plaintiff, Plaintiff is entitled to judgment as a matter of law. Therefore, Plaintiff requests the Court enter summary judgment in his favor and against Defendant in the amount of $500, that the Court treble those damages to $1,500, and that the Court enjoin Defendant from further violations of the TCPA.

## GOVERNING LEGAL STANDARD

A party is entitled to summary judgment if all of "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). "As the movant, each party must demonstrate that undisputed facts properly in the record entitle it to judgment as a matter of law." *Hinman v. M and M Rental Ctr., Inc.*, 596 F. Supp. 2d 1152, 1157 (N.D.Ill. 2009) (Bucklo, J.) (*citing* Fed. R. Civ. P. 56(c) and *Celotex*, 477 U.S. at 322). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Only disputes that may affect the outcome of the suit in light of the substantive law will preclude summary judgment." *Hinman*, 596 F. Supp. 2d at 1157.

**ARGUMENT**

Plaintiff's claim arises under the TCPA, which prohibits using "any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227 (b) (1) (C).

Subsection (b) of the TCPA authorizes the FCC to "prescribe regulations to implement the requirements of this subsection," including regulations governing opt-out notice requirements. 47 U.S.C. § 227 (b) (2) (D). Pursuant to this authority, the FCC promulgated 47 C.F.R. § 64.1200 (a) (4) (iii), which prohibits fax ads even sent with an established business relationship ("EBR") unless:

> (iii) The advertisement contains a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements. A notice contained in an advertisement complies with the requirements under this paragraph only if—
>
> > (A) The notice is clear and conspicuous and on the first page of the advertisement … [47 C.F.R. § 64.1200].

Finally, the TCPA provides a private right action "to recover for actual monetary loss for such violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227 (b) (3) (B). A court may treble the amount of the damages award if the court "finds that the defendant acted willfully or knowingly violated this subsequent or the regulations prescribed under this subsection." *Id.*; *see also Sengenberger v. Credit Control Services, Inc.*, No. 09 C 2796, 2010 WL 1791270, *6-7 (N.D. Ill. May 5, 2010) (Zagel, J.) (Exhibit 1) (trebling the statutory damages because defendant "willfully or knowingly" violated the TCPA).

To prevail under the TCPA, "plaintiffs must show that (1) defendant used a telephone facsimile machine, computer or other device to send one or more faxes to plaintiffs' facsimile machines, (2) the faxes sent contained material advertising the commercial availability or quality of any property, goods, or services, and (3) plaintiffs did not give prior express invitation or

3

permission for defendant to send the faxes." *Hinman*, 596 F. Supp. 2d at 1158. Even when a fax is sent pursuant to an "established business relationship" between the sender and the recipient, the fax still must contain a "clear and conspicuous" opt-out notice that complies with 47 C.F.R. § 64.1200 (a) (4) (iii). *See also In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, CG Docket Nos. 02-278, 05-338, Order, FCC 14-164 (rel. Oct. 30, 2014) ("FCC Opt-Out Order") (Exhibit 2) (confirming prior regulations requiring senders of fax ads to include certain information on the fax that will allow consumers to opt out, even if they previously agreed to receive fax ads from such senders, or had an existing business relationship with such senders); In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005, CG Docket Nos. 02-278, 05-338, Order, FCC 15-976 (rel. Aug. 28, 2015), n.3 ("FCC Retroactive Waiver Order") (Exhibit 3) ("The petitioners do not seek a waiver of a similar requirement that they include an opt-out notice on fax ads sent pursuant to an established business relationship as there is no confusion regarding the applicability of this requirement to such faxes.").

Here, there is no genuine issue of material fact and Plaintiff is entitled to judgment as a matter of law under the TCPA.

**A.     The fax at issue is an "advertisement."**

The TCPA defines an "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227 (a) (4). Here, there is no genuine issue of material fact that Defendant sent an "advertisement" as that word is defined by section 227 (a) (4) of the TCPA. The content of the fax Defendant sent clearly promoted the commercial availability of W.W. Grainger's "Motors & Power Trans," "Hand Tools," "Lighting," "Pumps & Plumbing", and "HVAC/R" products. *See* Exhibit D to SOF. The fax further promoted the sale of the Defendant's products by offering a limited time "$25 off"

4

special on the recipient's "next order of $100 or more." See Exhibit D to SOF.

Moreover, Defendant does not dispute that the fax was an advertisement and states that its purpose in sending the fax was to market to small businesses. SOF at ¶¶ 23, 26-27, 33.

### B. Defendant was the "sender" of the fax.

The TCPA prohibits using a "computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227 (b) (1) (C). The "sender" of an unsolicited advertisement for purposes of § 227 (b) (1) (c) is defined as "the person on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. 64.1200 (f) (10). *See also Paldo Sign and Display Co. v. Wagener Equities, Inc.,* 67 F.Supp.3d 874 (N.D. Ill. 2014) (granting partial summary judgment for fax sent on behalf of defendant by a fax blaster); *City Select Auto Sales, Inc. v. David Randall Associates*, No. 11-2658, 2015 WL 1421539, *12 (D.N.J. Mar. 27, 2015) (Exhibit 4) ("Rather, 'a person whose services are advertised in an unsolicited fax transmission, and on whose behalf the fax is transmitted, may be held [strictly] liable under the TCPA's ban on sending of faxes,' despite not physically transmitting the fax.") (quoting *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1254 (11th Cir. 2014)); *Helping Hand Caregivers, LTD. v. Darden Restaurants, Inc.*, No. 14-CV 10127 (N.D. Ill. May 14, 2015) ("[I]n addition to the person who physically sends a fax, 'a person whose services are advertised in an unsolicited fax transmission, and on whose behalf the fax is transmitted, may be held liable directly under the TCPA's ban on the sending of junk faxes.'") (quoting *Sarris*, 781 F.3d at 1254).

Defendant created the subject fax advertisement. SOF at ¶¶ 24-25. As described above, the fax advertisements promote Defendant's goods or services. See Exhibit D to SOF; SOF at ¶ 33. Defendant hired a company called Optima Direct to transmit its fax advertisements. SOF at ¶¶ 27-30. It is undisputed that Defendant is the "sender" of the fax advertisement Plaintiff

received.

**C.     Defendant's ads were sent by "facsimile machine."**

The TCPA makes it "unlawful" to use any "computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227 (b) (1) (C). A "facsimile machine" is defined as "equipment which has the <u>capacity</u> … to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227 (a) (2) (emphasis added). There is no dispute that Defendant hired Optima Direct to send advertisements by fax. SOF at ¶¶ 27-30. Plaintiff received Defendant's fax advertisement on his fax machine on December 2, 2009. SOF at ¶¶ 31-32.

It is undisputed that Defendant's faxes were sent by a "computer, or other device" to Plaintiff's "facsimile machine."

**D.     Defendant did not obtain "prior express invitation or permission" from Plaintiff prior to sending it the subject fax advertisement.**

The TCPA requires prior "express" invitation or permission to send an advertisement by fax. The TCPA defines the term "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's <u>prior express invitation or permission</u>, in writing or otherwise." 47 U.S.C. § 227 (a) (5) (emphasis added). "Express" consent means express consent, not implied consent.

In *Thrasher-Lyon v. CCS Commercial, LLC*, No. 11 C 04473, 2012 WL 3835089 (N.D. Ill, Sept. 4, 2012) (Tharp, J.), the court explained what constitutes "prior express invitation or permission" under the TCPA:

> Bizarre would be to read 'express consent' as 'implied consent.' In ordinary parlance, there is no such thing as 'implied express consent' – that is an oxymoron. Giving out one's phone number, at least outside of the special relationship sanctioned by the FCC, is not 'express' consent to besiegement by

6

> automated dialing machines. One 'expresses' consent by, well, expressing it: stating that the other party can call, or checking a box on form or agreeing to terms of service that explicitly permit automated telephone contact … Agreeing to be contacted by telephone, which Thrasher-Lyon effectively did when she gave out her number, is much different than expressly consenting to be robo-called about a debt she did yet know Farmers believed she owed. [2012 WL 3835089 at *5]

As the Seventh Circuit has noted, "the fact that [a] facsimile number was made available in a directory, advertisement or website does not alone entitle a person to send a facsimile advertisement to that number." *CE Design Ltd. v. King Architectural Metals*, *Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) (*citing* Report and Order and Third Order on Reconsideration, 21 F.C.C.R. 3787, 3800-01, 2006 WL 901720 ¶ 15 (April 5, 2006)).

The Federal Communications Commission ("FCC"), empowered by Congress to issue regulations to implement the TCPA, has repeatedly held that the publication of a fax number is not "express invitation or permission" to receive junk faxes. "We do not believe that the intent of the TCPA is to equate mere distribution or publication of a telephone facsimile number with prior express permission or invitation to receive … advertisements." *In the Matter of the Telephone Consumer Protection Act of 1991*, Memo. Opinion and Order, ¶ 37, 10 FCC Rcd. 12391 (Aug. 7, 1995). The FCC has further explained:

> [F]ax numbers are published and distributed for a variety of reasons, all of which are usually connected to the fax machine owner's business or other personal and private interests. The record shows that they are not distributed for other companies' advertising purposes. Thus, a company wishing to fax ads to consumers whose numbers are listed in a trade publication or directory must first obtain the express permission of those consumers. [*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 14014, 2003 FCC LEXIS 3673 (July 3, 2003)].

Here, the record is clear Defendant did not have Plaintiff's "prior express invitation or permission" to send him an advertisement by fax. SOF at ¶¶ 12-13, 18-22. The undisputed facts show that Defendant obtained Plaintiff's fax number from InfoUSA. SOF at ¶¶ 10, 12, 18.

7

Moreover, the record shows that Defendant never informed Plaintiff, or any customer for that matter, that it would use the customer's fax number to send them advertisements. SOF at ¶ 19. Defendant did not contact the Plaintiff or any fax recipient seeking permission to send fax advertisements. SOF at ¶ 20. The deposition of Defendant's representative, Robert J. Finn, Defendant testified that it believed it had Plaintiff's permission merely because Plaintiff had been a customer in the past and because Plaintiff's fax number was found in a publicly-available source. SOF at 21. However, the record is clear that Defendant never obtained Plaintiff's prior express consent to send him the subject advertisement by fax.

> Q. So I understand it is Grainger's position that plaintiff consented to receiving the fax advertisement. That is Grainger's position?
>
> A. That is correct.
>
> Q. Can you explain to me what that decision is based on?
>
> A. Yes. Mr. Davies is an existing customer, and he had his phone number and fax in a – publicly-available source, so that gives consent.
>
> Q. Any other reason?
>
> A. No. [SOF at 21].

Defendant continued that there was no other way Plaintiff gave permission to Defendant to send advertisements by fax. SOF at ¶ 22 (Q. Is there any other way that – either plaintiff or any of the other recipients gave consent to Grainger? A. Not that I'm aware of.)

The record is clear that Defendant did not obtain "prior express invitation or permission" from Plaintiff to send Plaintiff the subject fax advertisement on December 2, 2009.

E.  **Defendant's fax advertisement did not contain a compliant opt-out notice.**

The TCPA creates a private right of action for "violations of this subsection or regulations prescribed under this subsection." 47 U.S.C. § 227 (b) (3) (A). Subsection (b) of the TCPA authorizes the Federal Communications Commission ("FCC") to "prescribe regulations to

8

implement the requirements of this subsection," specifically including regulations governing opt-out notice requirements. 47 U.S.C. § 227 (b) (2) (D).

Pursuant to this authority, the FCC promulgated 47 C.F.R. § 64.1200 (a) (4) (iii) and (iv), which specifically enumerates the factors an opt-out notice must satisfy:

> 64.1200 (a) (4) (iii) The advertisement contains a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements. A notice contained in an advertisement complies with the requirements under this paragraph only if—
>
> (A) The notice is clear and conspicuous and on the first page of the advertisement;
>
> (B) The notice states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph (a)(4)(v) of this section is unlawful;
>
> (C) The notice sets forth the requirements for an opt-out request under paragraph (a)(4)(v) of this section;
>
> (D) The notice includes—
>
> (1) A domestic contact telephone number and facsimile machine number for the recipient to transmit such a request to the sender; and
>
> (2) If neither the required telephone number nor facsimile machine number is a toll-free number, a separate cost-free mechanism including a Web site address or email address, for a recipient to transmit a request pursuant to such notice to the sender of the advertisement. A local telephone number also shall constitute a cost-free mechanism so long as recipients are local and will not incur any long distance or other separate charges for calls made to such number; and
>
> (E) The telephone and facsimile numbers and cost-free mechanism identified in the notice must permit an individual or business to make an opt-out request 24 hours a day, 7 days a week.

Since then, the FCC has reiterated, "senders of fax ads must include certain information on the fax that will allow consumers to opt out, even if they previously agreed to receive fax ads from such senders." FCC Opt-Out Order, ¶ 1, FCC Retroactive Waiver Order, ¶ 21 (emphasizing

9

that full compliance with the requirement to provide an opt-out notice on fax ads sent with prior express permission of the recipient is required). Courts are in accord. *E.g.*, *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F.Supp.3d 482, 496 (W.D. Mich. Jan. 12, 2015) ("That opt-out notice is required even when there is an established business relationship, and even when there is no question that the sender received the fax number directly from the recipient (or from a public source), and not from someone who sold or licensed the information.") (Exhibit 5); *Spine and Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV-00489-TBR, 2014 WL 2946421 (W.D. Ky. June 30, 2014) ("the existence of that relationship is irrelevant if the opt-out notice does not meet the requirements under 47 U.S.C. 227(b)(2)(D). This is because sending an unsolicited fax advertisement to a recipient with whom an established business relationship exists is still a violation of the TCPA if the opt-out notice is not compliant.") (Exhibit 6); *Nack v. Walburg*, 715 F.3d 680, 685 (8th Cir. 2013) ("[W]e believe that the regulation as written requires the senders of fax advertisements to employ the above-described opt-out language even if the sender received prior express permission to send the fax."); *Bais Yaakov of Spring Valley v. Alloy, Inc.,* 936 F. Supp. 2d 272, 285–87 (S.D.N.Y. 2013) (finding an opt-out notice is required on solicited fax advertisements); *Vandervort v. Balboa Capital Corp.,* 287 F.R.D. 554 (C.D. Cal. 2012) (same); *Aventura Chiropractic v. Med Waste Mgmt.,* LLC, No. 12–21695–CIV, 2013 WL 3463489, *4 (S.D. Fla. July 3, 2013) (same) (Exhibit 7).

Courts in this district have granted summary judgment in accordance with the FCC's edict. For example, in *Holtzman v. Turza*, No. 08 C 2014, 2010 WL 4177150, *4-*5 (N.D. Ill. Oct. 19, 2010), aff'd 728 F.3d 682 (7th Cir. 2013), the district court ruled as follows:

> Defendant argues that there is a question of fact regarding whether some of the faxes were unsolicited because many of the potential recipients were his current and

former business associates and students. Plaintiffs contend that because defendant failed to comply with the TCPA's "opt-out notice" requirement, all of the faxes qualify as unsolicited advertisements regardless of the nature of the relationship between defendant and each recipient.

47 U.S.C. §§ 227 (b) (1) (C) (iii) and (b) (2) (D) require that all fax advertisements include a clear and conspicuous opt-out notice informing a recipient that she can request that the sender not transmit any future unsolicited fax advertisements. Section 227 (b) (1) (C) (iii) of the TCPA provides that:

> It shall be unlawful for a person within the United States, or any person outside of the United States if the recipient is within the United States ... to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless ... the unsolicited advertisement contains a notice meeting the requirements under paragraph (2) (D).

The notice must include a 24-hour toll free telephone number, and a request must be complied with within the shortest reasonable time.

It is undisputed that none of the 41 Daily Plan-Its, which the court has already found to be unsolicited advertisements, included such a notice. Consequently, defendant is liable for every fax received by the plaintiff class regardless of whether he had an established business relationship with any of the recipients. For these reasons, the court grants summary judgment in plaintiffs' favor on this issue.

In its Opt-Out Order, the FCC confirmed that substantial compliance with section 64.1200 (a) (4) (iv) does not meet the requirements imposed by the statute. FCC Opt Out Order at ¶ 33. Instead, "full compliance is required." *Id.*

In this case, Defendant's fax advertisement did not contain a compliant opt-out notice because the opt-out notice was not "clear and conspicuous." 47 U.S.C. § 227 (b) (2) (D) (i). *See* Exhibit D to SOF; SOF at ¶¶ 34-35. The FCC has defined the term "clear and conspicuous" with an objective standard: "a notice that would be apparent to the reasonable consumer, separate and distinguishable from the advertising copy or other disclosures." § 64.1200 (a) (f) (3). The Compact Edition of the Oxford English Dictionary (Oxford University Press, 1971), p. 99, defines the word "apparent" as: "1. Meeting the eyes, showing itself; open to sight, visible, plainly seen" … "2. Conspicuous, prominent." … "3. Manifest to the understanding; evident,

11

plain, clear, obvious; palpable." As a result, the FCC created an objective, "reasonable consumer" standard that allows the Court to conclude that Defendant's opt-out notice is not "clear and conspicuous."

In *Murray v. New Cingular Wireless Services*, Inc., 523 F.3d 719, 726 (7th Cir. 2008), the Seventh Circuit applied the Illinois Uniform Commercial Code, which defines "conspicuous," when it analyzed whether a disclosure was clear and conspicuous:

> "Conspicuous," with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:
>
> (A) a heading . . . ; and
>
> (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language. [UCC §1-201 (b) (10) (2001 revised ed.) at 810 ILCS 5/1-201 (b) (10)].

The Seventh Circuit determined that the disclosure at issue was not conspicuous because "the eye is not drawn to it." *Id.* at 727. *See also Exclusively Cats Veterinary Hosp. v. Florida Infusion Servs., Inc.*, No. 12-15429, 2013 WL 2318462 (E.D. Mich. May 28, 2013) (holding defendant could not prevail on its argument that the opt-out notice complied with the TCPA's statutory requirements when it was in tiny font and not separate from the other disclosures) (Exhibit 8); *Guthrie v. Hidden Valley Gold and Ski, Inc.*, 407 S.W.3d 642, 648 (Mo.App. E.D. 2013) (describing contract language as "sufficiently conspicuous" when it is "visually distinct from the other paragraphs because it was printed in capitalized, bold print" and "obvious").

Here, Defendant's opt-out notice objectively fails to meet the "clear and conspicuous" requirement. First, its 6.5-point font is not "apparent to the reasonable consumer." Its size

approaches that which cannot be read with the naked eye. *See*, *e.g.*, SOF at ¶ 35 (testifying that the notice is not intelligible without Plaintiff's glasses on, and even with glasses on, "It's small, but I can make it out."). A notice is not "apparent," "conspicuous," "plainly seen," or "obvious" to the "reasonable consumer" when it is in a smaller typeface than the other words in the advertisement. *See, e.g., Spine and Sports Chiropractic, Inc. v. ZirMed, Inc.*, 2014 WL 2946421 at *18 n.17 ("The Court also notes the notice is arguably not "clear and conspicuous," as required by paragraph (i), because it is in a type-face smaller than the remainder of the ad copy and at the bottom of the page.")

Defendant's opt-out notice is the "fine print" of the advertisement. It is disproportionately small, dwarfed by the remainder of the text. It is not separate and distinguishable from the advertising copy or other disclosures. See <u>Exhibit</u> D to SOF. The eye is not drawn to it.

Even when assessing the opt-out notice in the light most favorable to Defendant, there can be no dispute that the opt-out notice is not compliant because it is not "clear and conspicuous" and does not inform Plaintiff that he could make a request not to receive any further faxes by calling a toll free fax or telephone number at any time, 24 hours a day, 7 days a week. *See* <u>Exhibit D</u> to SOF. As a result, Plaintiff is entitled to summary judgment on his TCPA claim.

**F.     The Court should award $500 for Defendant's violation of the TCPA and then treble the damages to $1,500.**

The TCPA creates a private cause of "action to … receive $500 in damages for each such violation." 47 U.S.C. § 227 (b) (3) (B). Defendant violated the TCPA when it sent an advertisement by fax to Plaintiff's fax machine without a statutorily-compliant opt-out notice. As a result, Plaintiff should be awarded $500 in damages.

The Court may treble the damages award if it finds the Defendant's violations were

committed "willfully or knowingly." 47 U.S.C. § 227 (b) (c). The Communications Act of 1943—of which the TCPA is a part—defines the term "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[ ], rule or regulation." 47 U.S.C. § 312 (f) (1). Courts have adopted the "common interpretation that 'willfully' or 'knowingly' simply requires that the act be intentional or volitional, as opposed to inadvertent, and not that defendant must have known that the conduct would violate the statute." *Bridgeview v. Health Care Center Ltd. v. Clark*, No. 09 C 5601, 2013 WL 1154206 (N.D. Ill. 2013) (citing *Sengenberger v. Credit Control Services, Inc.,* 2010 WL 1791270 at \*6).

Here, it is undisputed that Defendant purposefully sent the fax in order to market to small businesses like Plaintiff that had not provided their fax number to Defendant. *See* SOF at ¶¶ 10, 12, 23, 26-28. Defendant did not send Plaintiff the fax accidentally. *Id.* Thus, the Court should find that Defendant sent the fax "willfully or knowingly" and treble the damages award to $1,500.

## **CONCLUSION**

Plaintiff respectfully requests that the Court enter an order that: (1) grants summary judgment in Plaintiff's favor and against Defendant for its violation of the TCPA and awards Plaintiff $500 for that violation; (2) trebles the damage award to $1,500; (3) enjoins Defendant from future violations of the TCPA; and (4) awards such other and further relief as the Court deems appropriate under the circumstances.

Dated:  October 14, 2015              Respectfully submitted,

                                                DAVID DAVIES d/b/a DAVIES HOME SERVICES,

                                    By:    <u>s/ Kimberly M. Watt</u>
                                                  One of his attorneys

                                                Phillip A. Bock
                                                James M. Smith
                                                Kimberly M. Watt
                                                BOCK & HATCH, LLC
                                                134 North La Salle Street, Suite 1000
                                                Chicago, IL  60602
                                                Telephone:  312/658-5500