Slip Copy, 2010 WL 1791270 (N.D.Ill.)
**(Cite as: 2010 WL 1791270 (N.D.Ill.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
Christopher SENGENBERGER, Plaintiff,
v.
CREDIT CONTROL SERVICES, INC. d/b/a Credit Collection Services, Defendant.

No. 09 C 2796.
May 5, 2010.

Timothy J. Sostrin, Legal Helpers, PC, Chicago, IL, for Plaintiff.

David M. Schultz, Daniel R. Degen, Hinshaw & Culbertson, Chicago, IL, for Defendant.

### *MEMORANDUM OPINION AND ORDER*
JAMES B. ZAGEL, District Judge.

**\*1** Plaintiff filed his forty-count complaint alleging violations of the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act. The parties reached a settlement on counts one through seventeen, and those counts were dismissed on July 23, 2009. Counts eighteen through forty are made pursuant to the Telephone Consumer Protection Act ("TCPA"). Counts eighteen through twenty-six allege that Defendant Credit Control Services ("CCS") violated 47 U.S.C. § 227(b)(1)(A) by leaving messages without prior consent. Counts twenty-seven through thirty-five assert that CCS violated 47 C.F.R. 64.1200(B)(1) by not stating its legal name in its prerecorded messages. Finally, counts thirty-six through forty allege that CCS violated 47 C.F.R. 64.1200(B)(2) because five prerecorded messages did not provide CCS's telephone number. Plaintiff and Defendants have filed motions for summary judgment as to the TCPA claims. For the following reasons, Plaintiff's and Defendant's motions are granted in part and denied in part.

**I. STATEMENT OF FACTS**

In August 2008, Sengenberger sought medical treatment from Dr. Gilberto Munoz. At this time, Plaintiff provided Dr. Munoz with his cell phone number and authorized Dr. Munoz to call his cell phone. In connection with Plaintiff's office visit, Dr. Munoz requested laboratory testing services from Quest Diagnostics, Inc. ("Quest"). Dr. Munoz provided Quest with Sengenberger's contact information including a telephone number.

Defendant alleges that Plaintiff failed to pay his debt due to Quest. The allegedly unpaid debt was $22.97. Quest provided Defendant with the contact information that had been supplied to Quest by Dr. Munoz, including Sengenberger's phone number. While Plaintiff disputes that he owed Quest any outstanding payments, it is undisputed that Quest asked Defendant to collect Plaintiff's alleged debt. Defendant regularly does business as "Credit Collection Services" which is not its legal name. The name Credit Collection Services is an assumed name and is registered as an assumed name at the Illinois Secretary of State's Office. The name Credit Collection Services is registered with the Illinois Secretary of State, and is listed on the License provided to it by the Illinois Department of Financial and Professional Regulation.

Defendant made phone calls to collect the debt and only called the telephone number that was provided to them by Quest. Each time Defendant called Plaintiff, it played a prerecorded message which stated:

> This is an important message for Christopher Sengenberger. This is regarding a private business matter. If you are not the intended party we are trying to reach, please call 1-866-945-4973 and we will cease further attempts to this number. If you are not the intended party please hang up at this time. This message contains private information and should not be played in a manner where it could be heard by others. This call is

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1791270 (N.D.Ill.)
**(Cite as: 2010 WL 1791270 (N.D.Ill.))**

from Credit Collection Services. This is an attempt to collect a debt and any information obtained will be used for that purpose. For your privacy protection, visit www.warningnotice.com to access your personal account information. Your file number is * * *-193-400-81. To hear this message again press # . Thank you.

***2** On December 23, 2008, January 6, 2009, January 13, 2009, January 18, 2009, and February 28, 2009, a portion of the prerecorded message was left on Plaintiff's voicemail. The partial message stated:

> to this number. If you are not the intended party please hang up at this time. This message contains private information and should not be played in a manner where it could be heard by others. This call is from Credit Collection Services. This is an attempt to collect a debt and any information obtained will be used for that purpose. For your privacy protection, visit www.warningnotice.com to access your personal account information. Your file number is * * *-193-400-81. To hear this message again press # . Thank you.

The message in its entirety was not recorded on Plaintiff's voicemail because it began to play when Plaintiff's personal greeting answered the telephone.

On January 3, 2009, January 10, 2009, January 22, 2009, and January 26, 2009, Plaintiff answered the phone call from Defendant and heard the entire prerecorded message. On December 26, 2008, Plaintiff sent a letter to Defendants via certified mail disputing the alleged debt and instructing Defendants to cease further telephone calls to Plaintiff. Plaintiff has provided the Court with a return receipt indicating that CCS received this letter on December 29, 2008.

**II. STANDARD OF REVIEW**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Pugh v. City of Attica, Ind., 259 F.3d 619, 625 (7th Cir.2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. Payne v. Pauley, 337 F.3d 767, 773 (7th Cir.2003) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." EEOC v. Sears, Roebuck & Co., 233 F.3d 432, 437 (7th Cir.2000). I consider the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in the nonmovant's favor. Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir.2002). I will accept the nonmoving party's version of any disputed fact only if it is supported by relevant, admissible evidence. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir.1996).

**III. DISCUSSION**

A. *Counts Eighteen Through Twenty-Six*

***3** The TCPA prohibits the use of a prerecorded voice when making calls to a cell phone. 47 U.S.C. § 227(b)(1). Specifically, the TCPA states that it is unlawful for a person:

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(A) to make any call (other than a call made for emergency purposes or with the prior express consent of the called party) using any automatic telephone dialing system or artificial or prerecorded voice

...

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).

The prohibition does not apply if the called party consented to receive auto-dialed and prerecorded message calls on their cell phone. The Federal Communications Commission ("FCC") regulation governing debtor consent states that:

Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party, we clarify that such calls are permissible. We conclude that the provision of a cell phone number to a creditor, e.g., as part of credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt. FCC 07-232, ¶ 9.

Calls placed by a third-party collector on behalf of that creditor [to whom prior express consent was provided] are treated as if the creditor placed the call. *Id.* at ¶ 10. The defendant bears the burden of proof with respect to "prior express consent." *U.S. v. First City Nat. Bank of Houston,* 386 U.S. 361, 366, 87 S.Ct. 1088, 18 L.Ed.2d 151 (1967) (where one claims the benefit of an exception to the prohibition of a statute, that party carries the burden of proof); *see also In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling,* FCC 07-232, CG Docket No. 02-278 (Dec. 28, 2007) ("To ensure that creditors and debt collectors call only those consumers who have consented to receive auto-dialed and prerecorded message calls, we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent. The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications.") The TCPA authorizes recovery of either the actual monetary loss or statutory damages of $500 for each violation, whichever is greater. 47 U.S.C. § 227(b)(3).

It is undisputed that Plaintiff provided his cell phone number to Dr. Munoz. Dr. Munoz then provided this number to Quest, and Quest provided the number to Defendant. What is at issue here, is whether Plaintiff provided statutory consent to Defendants when he gave his telephone number to Dr. Munoz.

**\*4** Defendant argues that as a matter of policy, Sengenberger's consent allowing Dr. Munoz to call his cell phone should extend to Quest and Defendant. Plaintiff contends that the consent given to Dr. Munoz should not extend to Defendant because the plain language of the statute states that consent must be express. Plaintiff further argues that even if the Court finds that he did give Defendant consent, this consent was explicitly revoked by his December 26th letter. In his letter, Plaintiff acknowledged a December 23, 2008 collection call and explicitly disputed the debt. Pursuant to the Fair Debt Collection Practices Act ("FDCPA"):

[i]f the consumer notifies the debt collector in writing within the thirty-day period [ ] [after receiving the initial communication] that the debt, or any portion thereof, is disputed [ ], the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification or judgment [ ] and a copy of such verification is mailed to the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

consumer by the debt collector.

15 U.S.C. 1692(f) § 809(b).

Accordingly, after the receipt of Plaintiff's letter, Defendant should have ceased all collection calls and verified the debt. Plaintiff sent his letter via certified mail and the letter was signed for by Troy Delgado. While Defendant states that it has no independent record of receipt, delivery confirmation records indicate that the letter was delivered on December 29, 2008. Defendant further argues that Plaintiff's letter was insufficient to revoke consent because it did not contain any information as to the specific account number and because Plaintiff's zip code was incorrect. Defendant fails to assert how either of these facts are relevant to the revocation of Plaintiff's consent, particularly because the statute does not explicitly name either of those criterion as necessary to halt collection calls regarding disputed debts. Accordingly, I find that Defendant did not have consent to make collection phone calls to Plaintiff after December 29, 2008.

Remaining now is whether or not Defendant had consent to make its December 23, 2008 phone call. Defendant argues that because Sengenberger permitted laboratory services to be provided in connection with its treatment by Dr. Munoz, Quest should be considered Plaintiff's "creditor." Defendant asserts that because Sengenberger consented to Quest's third-party services, he consented CCS's calls. The Federal Communications Commission has stated that if the question as to whether express consent was provided, "the burden will be on the creditor to show it obtained the necessary prior express consent." FCC 07-232 at ¶ 10. Here, the only facts put forth regarding consent are: (1) in August 2008 Plaintiff sought medical treatment from Dr. Munoz; (2) Plaintiff provided his cell phone number to Dr. Munoz and authorized Dr. Munoz to call his cell phone number; (3) in August 2008 Dr. Munoz requested laboratory testing services from Quest in connection to Sengenberger's visit; (4) Dr. Munoz provided Quest with Plaintiff's cell phone number; (5) Plaintiff "had Quest perform the labor-atory testing services;" (6) Quest then provided Defendant with Plaintiff's cell phone number. Neither party has provided a copy of Plaintiff's paperwork authorizing Dr. Munoz to call him. Likewise, while it is undisputed that "Plaintiff had Quest perform the laboratory testing services," no facts have been put forth to detail Plaintiff's interaction and communication with Quest. While Defendants carry the burden of showing that they obtained express consent, I do not find that the facts in the record are sufficient for me to rule on this issue.

**\*5** Accordingly, I find that Defendant did not have consent when it called Plaintiff on January 3, 2009, January 6, 2009, January 13, 2009, January 10, 2009, January 18, 2009, January 22, 2009, January 26, 2009 and February 28, 2009, and I grant Plaintiff's motion for summary judgment as to counts nineteen through twenty-six. I decline to rule on count eighteen at this time because I have insufficient information. I hereby order supplemental briefing on the issue of consent as to the call placed on December 23, 2008, and order that supplemental briefs be filed by May 21, 2010. I further grant leave for the parties to submit additional facts which will assist me in my ruling.

*B. Counts Twenty-Seven Through Thirty-Five*

Pursuant to authority granted by the TCPA, the FCC has proscribed regulations regarding prerecorded telephone messages. 47 U.S.C. § 227(b)(2). Specifically, 47 C.F.R. 64.1200(b)(1) states:

> (b) All artificial or prerecorded telephone messages shall:

> (1) At the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under which the entity is registered to conduct business with State Corporation Commission (or comparable regulatory authority) must be stated.

The FCC further provided that:

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

Slip Copy, 2010 WL 1791270 (N.D.Ill.)
**(Cite as: 2010 WL 1791270 (N.D.Ill.))**

With respect to the caller's name, the prerecorded message must contain, at a minimum, the legal name under which the business, individual or entity calling is registered to operate. The Commission recognizes that some businesses use "d/b/as" or aliases for marketing purposes. The rule does not prohibit the use of such additional information, provided the legal name of the business is also stated.

*Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991; Final Rule,* FR Doc 03-18766, 68 Fed.Reg. 143, pg. 44163.

It is undisputed that Defendant's message to Plaintiff identified "Credit Collection Services" as the caller. It is also undisputed that Defendant's legal name is "Credit Control Services, Inc." Defendant does business as "Credit Collection Services," and "Credit Collection Services" is an assumed name registered with the Illinois Secretary of State. That name is also listed on Credit Control Services, Inc.'s license provided by the Illinois Department of Financial and Professional Regulation.

The Federal Communications Commission is explicit in its statement that the legal name of a business must be provided in any pre-recorded message. While the d/b/a name can be mentioned in the phone call, it must be in conjunction with the entity's legal name. It is undisputed that Defendant's legal name is Credit Control Services, Inc. and it is further undisputed that Defendant did not provide its legal name to Plaintiff in its prerecorded message. Accordingly, I grant Plaintiff's motion for summary judgment as to counts twenty-seven through thirty-five.[FN1]

> FN1. Defendant argues that any FCC regulation with respect to cellular telephone calls are subject to a prior consent analysis. Defendant also implies that prior consent may relieve a defendant from specific FCC regulations. However, Defendant fails to show that the FCC intended to exempt automated collection calls from the requirements of 47 C.F.R. 64.1200(b)(1), even if consent was given. Accordingly, even if Plaintiff had consented to Defendant's telephone calls, I do not find Defendant exempt from 47 C.F.R. 64.1200(b)(1).

*C. Counts Thirty-Six Through Forty*

**\*6** The FCC has enacted regulations pertaining to contact information being provided in prerecorded messages stating that:

> (b) All artificial or prerecorded telephone messages shall:
>
> (2) During or after the message, state clearly the telephone number (other than that of the autodialer or prerecorded message player that placed the call) of such business, other entity or individual.

47 C.F.R. 64.1200(b)(2)

Plaintiff argues that Defendant violated this regulation by leaving five prerecorded messages on his telephone, without providing the Defendant's telephone number. It is undisputed that during five phone calls, Plaintiff did not manually answer his telephone. As a result, Defendant's prerecorded message began to play as soon as Plaintiff's voicemail system picked up, and a portion was played during Plaintiff's voicemail greeting. Therefore, although Defendant's message *did* include its telephone number in the third sentence of its message, it was not recorded in its entirety by Plaintiff's voicemail.

Plaintiff's argument stretches the statute beyond its intended application. 47 C.F.R. 64.1200(b)(2) states only that the telephone number of the entity must be included in the prerecorded message. Here, it is undisputed that the entire message, including Defendant's telephone number, was played; however, only a portion of the message, not including Defendant's telephone number, was captured by Plaintiff's voicemail. The statute does not

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1791270 (N.D.Ill.)
**(Cite as: 2010 WL 1791270 (N.D.Ill.))**

require an entity to state its telephone number at any given time during the message. The fact that Plaintiff's personal voice message recording did not record Defendant's message in its entirety is insufficient to constitute a violation. Accordingly, Plaintiff's motion for summary judgment on counts thirty-six through forty is denied. Defendant's motion for summary judgment on counts thirty-six through forty is granted.

*D. Statutory Damages*

Courts may treble the damages award if the court finds that defendant's violations were committed "willfully or knowingly." 47 U.S.C. § 227(b)(3). Although neither the TCPA nor the FCC regulations define the terms "willfully or knowingly", courts have generally interpreted willfulness to imply only that an action was intentional. *Smith v. Wade,* 461 U.S. 30, 41 n. 8, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). While the TCPA does not define willful, the Communications Act of 1943, of which the TCPA is a part, defines willful as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[ ], rule or regulation." In *Dubsky v. Advanced Cellular Communications, Inc.,* No.2008 cv 00652, 2004 WL 503757, at *2 (Ohio Com.Pl. Feb.24, 2004), the court found that in the context of the TCPA, the term acting "willfully" means that "the defendant acted voluntarily, and under its own free will, regardless of whether the defendant knew that it was acting in violation of the statute. Defendants argue that a finding of "willfully" or "knowingly" is an issue for the trier of fact. *Pollock v. Bay Area Credit Services, LLC,* 2009 WL 2475167 (S.D.Fla. Aug.13 2009). In *Pollock,* the court found that genuine issues of material fact existed. That is not the case here. There is no dispute as to whether Defendants intentionally made the contested phone calls to Plaintiff. Defendants have put forth no facts to contest the assertion that any of the nine disputed phone calls were made willfully or knowingly. Accordingly, I find that Defendants knowingly and willfully made the phone calls.

**IV. CONCLUSION**

***7** For the foregoing reasons, I grant summary judgment as to counts nineteen through thirty-five for Plaintiff. I grant summary judgment as to counts thirty-six through forty for Defendant. In regard to count eighteen, I order supplemental briefing on the issue of consent to be filed by May 21, 2010. Finally, I find that Defendant's calls to Plaintiff were made "willfully or knowingly."

N.D.Ill.,2010.
Sengenberger v. Credit Control Services, Inc.
Slip Copy, 2010 WL 1791270 (N.D.Ill.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.